UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
VERONICA CAJAMARCA,

                Plaintiff,

      v.                                                                **11-CV-2780 (BMC)**

REGAL ENTERTAINMENT GROUP and OTIS GADSDEN,
*Individually*,

                Defendants.
-------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

                                                 Jesse C. Rose
                                                      Of Counsel
                                               William K. Phillips.
                                               PHILLIPS & PHILLIPS,
                                               Attorneys at Law, PLLC
                                               *Attorneys for Plaintiff*
                                               30 Broad Street, 35th Floor
                                               New York, New York 10004
                                               (212) 587-0760

# **TABLE OF CONTENTS**

Table of Contents ...................................................................................................................... i

Table of Authorities .................................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................. 4

   I. Legal Standards for Summary Judgment............................................................................ 4

   II. Defendants Have Not Established Entitlement to Judgment on Plaintiff's Hostile Work
   Environment Claims ............................................................................................................. 6

      A. Defendants Are Liable for the Hostile Work Environment Created by Defendant
      Gadsden Since he had Supervisory Authority Over Plaintiff ............................................. 6

      B. Defendants Are Liable for the Hostile Work Environment Created After Plaintiff
      Complained About Sexual Harassment ............................................................................. 7

   III. Defendants Are Liable for Plaintiff's Claim for Retaliatory Termination and Other
   Retaliation Claims................................................................................................................. 9

   IV. Defendant Gadsden is Liable to Plaintiff Individually...................................................... 10

   V. Plaintiff Can Prove Her Claims for Sex Discrimination, Sexual Assault and Battery ......... 10

   VI. The Court Should Exercise Pendant Jurisdiction .............................................................. 11

CONCLUSION......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

In re Dana Corp., 574 F.3d 129, 151 (2d Cir. July 31, 2009) ........................................................ 5

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .. 5

Asp v. Milardo Photography, Inc., 573 F. Supp. 2d 677, 684 (D. Conn. 2008) .............................. 5

Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 89 (2nd Cir. 1996) ................................ 9

In re Dana Corp., 574 F.3d 129, 151 (2d Cir. July 31, 2009) ........................................................ 5

Karibian v. Columbia Univ., 14 F.3d 773, 780 (2nd Cir. 1994) ...................................................... 8

Mack v. Otis Elevator Co., 326, F.3d 116, 123 (2nd Cir. 2003) ............................................. 6, 7, 8

Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2nd Cir. 1997) ....................................................... 8

Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) ....................... 5

Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2nd Cir. 2011) ........................ 8

Tepperwien v. Entergy Nuclear Operations, Inc., 606 F. Supp. 2d 427, 441-442 (S.D.N.Y. 2009) 6

Terry v. Ashcroft, 336 F.3d 128, 152 (2nd Cir. 2003) ..................................................................... 9

Torres v. Gristede's Operating Corp., 628 F.Supp.2d 447, 454 (S.D.N.Y. Aug. 28, 2008) ............ 5

**Statutes**

Fed. R. Civ. P. 56(c) .................................................................................................................... 4, 5

New York City Administrative Code, Title 8-107(19) ................................................................. 10

**PRELIMINARY STATEMENT**

Plaintiff, Veronica Cajamarca ("Cajamarca" or "Plaintiff") herein opposes and responds to Defendants' motion for summary judgment. Defendants' motion for summary judgment is baseless as Defendants have failed to establish by a preponderance of the evidence that there are no questions of fact for the fact finder to decide at trial as to any of Plaintiff's claims. Drawing all reasonable inferences from the evidence in favor of the non-moving party, as required on summary judgment, as well as considering the entirety of relevant case-law, this motion should be denied. Plaintiff notes that Defendants' Rule 56.1 statement of facts is not undisputed as more than half of the paragraphs are specifically contradicted by evidence often included within Defendants' own motion. This knowing ignorance of factual disagreements should support a request for costs in opposing such a baseless motion.

Defendants' motion attempts to paint Plaintiff in a negative light by putting forward an absolutely disputed account of the events that led to this lawsuit, ignoring vast amounts of evidence, misstating the evidence cited and further drawing irrational conclusions from scant evidence. In reality, Defendants' attempts to save money by having a single human resources manager assigned to an entire region, stationed in Tennessee, while removing all real authority from their management led to a well-documented but entirely unreasonable response to real claims of sexual harassment and retaliation. In the end Plaintiff was left emotionally damaged, unemployed and dejected. A thorough review of the facts available demonstrates that there is ample evidence with which a jury could conclude that Plaintiff's claims are valid and, as such, Defendants' motion should be denied in its entirety.

1

## STATEMENT OF FACTS

Plaintiff's case is founded in fairly simple but disputed facts. Defendants' motion includes a narrative, largely unfounded and irrelevant, that attempts to make Plaintiff seem to be a poor employee. However, the facts do not support their contentions and a majority of their factual assertions do not support their motion for summary judgment.

Plaintiff was a good employee who was never in danger of being terminated while she worked at the location with Defendant Otis Gadsden ("Defendant Gadsden") and Nick green. Deposition of Nick Green, Exh. B, pp. 84. She worked for Defendants as an hourly worker and believed Defendant Gadsden to be her supervisor. Deposition of Plaintiff Cajamarca, Exh. A, pp. 124, 142-143, 145-148. This influenced her ability to report him for the sexual harassment as she was fearful of retaliation. Exh. A, pp. 193-194. When she did complain, she did so only because she was told that if she did not complain then a complaint would be filed for her. Exh. A, pp. 185-191. The complaints Plaintiff made stated that Defendant Gadsden consistently asked her out, made sexual comments and innuendos towards her in attempts to get her to have sex with him, kissed her and exposed himself to her in the break room. Def. Exhs. 15, 20. It was further found that Defendant Gadsden had convinced Plaintiff to loan him $600.00 which he has not repaid to this day. Deposition of Defendant Gadsden, Exh. C, pp. 80-81. This was later used by Defendants to justify a conclusion that Plaintiff had made up the allegations against Defendant Gadsden because he would not repay the money. Def. memo, pp. 5-6.

Defendants' Human Resources department makes all decisions about what to do in cases of harassment and discrimination, including this claim. Exh. B, pp. 50-51. The individual in this instance, responsible for the entire Northeast region, was Jennifer Jones who works in Knoxville, Tennessee. Jones Decl. ¶ 1.

After Plaintiff complained, Defendants did an investigation which included bland and generic questions without any follow up or situational specific questioning with a purpose of only determining if Defendant Gadsden had sexually harassed anyone else. Defs. Exh. 19; Exh. B, pp. 15-18. Defendants' conclusion, made by an individual working in Tennessee with no physical connection to the location where the individuals work, was to not make a determination about what happened and Defendants attempted to schedule Plaintiff on different shifts from Defendant Gadsden and hoped that the problem would just go away. Defs. Exh, 31; Exh. B, pp. 50-51; Jones Decl. ¶ 1. There is no conclusion of whether the complaint was justified, not justified or otherwise.

After Plaintiff made her complaint, Plaintiff spoke with Defendant Gadsden and she claims that he threatened her in retaliation for making the complaint. Defs. Exh. 32. The reaction to this was to suspend Defendant Gadsden and obtain statements relating to what occurred. Defs. Exh. 14; Exh. C, pp. 92-93. Aside from the suspension, no further cautionary action was taken and no real investigation was done which would have easily turned up Defendant Gadsden's violent history. Exh. C, pp. 12-14. Defendants did not know that prior to this Defendant Gadsden was involved in two violent crimes. Exh. C, pp. 12-14.

Plaintiff further complained that she was being treated differently by everyone in the theater, consistently burst into tears and was otherwise stressed to the point of emotional turmoil due to the thought of Defendant Gadsden coming back to work after threatening her in retaliation for her complaint of sexual harassment. Defs. Exh. 32; Deposition of Jane Cinsov, Exh. D, pp. 24-26. Defendants essentially ignored these allegations of being differently treated after her complaint and only investigated a couple of specific instances which they dismissed as being inconsequential. Defs. Exhs. 24, 27 & 32. This is solidified by Defendants' failure to even

mention these complaints within their motion while concluding that the specific instances they mention were the only complaints Plaintiff made. In reality, Defendants were aware that Plaintiff was suffering emotionally and took no action until late December when they transferred Plaintiff to another location, nearly two months after first being threatened and only after she requested it multiple times for several weeks. Defs. Exh. 32. This transfer was meant to only be temporary and Plaintiff expected to be transferred back after a brief hiatus. Exh. B, p. 20. However, by this point, Plaintiff was emotionally distraught and unable to return to work; ultimately, she was terminated because she was unable to return to work due to the emotional pain and suffering she endured. Defs. Exh. 38. No reasonable person would have continued working in that environment.

Because Defendants investigation was so superficial they completely ignored that Defendant Gadsden asked his manager, Jane Cinsov, out on several dates but was turned down each time. Exh. D, pp. 16-17. After these rejections Defendant Gadsden was written up for inappropriate behavior when he approached Ms. Cinsov in an angry manner. Exh. B, pp. 25-26.

Ultimately, Plaintiff was left without a job and emotionally damaged while Defendant Gadsden continued to work. Defendants have blamed Plaintiff throughout for the occurrences and permitted and encouraged policies which resulted in her being emotionally damaged to the extent at she was unable to return to work, emotionally damaged, constructively discharged and ultimately terminated.

## ARGUMENT

### I. Legal Standards for Summary Judgment

Summary judgment is only available when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The

function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but <u>only</u> to determine whether, as to any material issue, a genuine factual dispute exists." <u>In re Dana Corp.</u>, 574 F.3d 129, 151 (2d Cir. July 31, 2009) (emphasis added). "[W]hen the party against whom summary judgment is sought comes forth with affidavits or other material obtained through discovery that generates uncertainty as to the true state of <u>any</u> material fact, the procedural weapon of summary judgment is inappropriate." <u>Id.</u> (emphasis added) (citation omitted).

"The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party." <u>Asp v. Milardo Photography, Inc.</u>, 573 F. Supp. 2d 677, 684 (D. Conn. 2008). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." <u>Id</u>. (citations and quotations omitted). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." <u>Torres v. Gristede's Operating Corp.</u>, 628 F.Supp.2d 447, 454 (S.D.N.Y. Aug. 28, 2008) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The moving party bears the burden of showing that a reasonable jury <u>could not</u> find for the nonmoving party. *See* <u>id.</u> "The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant." *See* <u>id.</u> (citing Fed. R. Civ. P. 56(c)).

A party resisting a motion for summary judgment "<u>must</u> be afforded 'a reasonable opportunity to elicit information within the control of his adversaries.'" <u>In re Dana Corp.</u>, 574 F.3d at 149 (emphasis added) (quoting <u>Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 445 (2d Cir. 1980)). Moreover, "summary judgment should not be granted against non-dilatory party who has been 'denied reasonable access to potentially favorable information.'" <u>Id.</u> (quoting <u>Quinn</u>, 613 F.2d at 445).

Here, Defendants' motion is entirely baseless and submitted with knowing disregard for the facts of the case. Defendants' attempt to create a story line that disparages Plaintiff is obvious as they include patently irrelevant evidence which does not and should not affect the motion in any way. They do so in a manner that suggests that, due to their lack of evidence to support an award of summary judgment, Defendants are attempting to justify the motion rather than succeed in having judgment as a matter of law granted. As such, the motion should be denied in its entirety and Plaintiff should be awarded the costs and fees for defending the motion.

## II. Defendants Have Not Established Entitlement to Judgment on Plaintiff's Hostile Work Environment Claims

Defendants' motion, as it relates to Plaintiff's hostile work environment claim, ignores substantial amounts of evidence while drawing conclusions based on incomplete consideration of the evidence they actually cite.

### A. Defendants Are Liable for the Hostile Work Environment Created by Defendant Gadsden Since he had Supervisory Authority Over Plaintiff

Defendants do not claim that Defendant Gadsden's actions as alleged by Plaintiff would not have established a hostile work environment and instead challenge whether they should be held liable. In Title VII cases the question of whether the employer is liable for a hostile work environment created by an employee depends, in part, on whether the employee being harassed was supervised by the harasser. Tepperwien v. Entergy Nuclear Operations, Inc., 606 F. Supp. 2d 427, 441-442 (S.D.N.Y. 2009). Whether an individual is a supervisor "draws on, but is not exclusively derived from, principles of agency." Mack v. Otis Elevator Co., 326, F.3d 116, 123 (2nd Cir. 2003). Whether the level of supervision meets the requirement for imputing liability depends on whether the authority exercised by the harasser "enabled him or materially augmented his ability to impose a hostile work environment." Tepperwien, 606 F.Supp. 2d at 442

6

(citing Mack, 326 F.3d at 125).

In Tepperwien, the Court found that there was a genuine issue of material fact as to whether the harasser was a supervisor. Id. The harasser in that case did not have a supervisory title but was an instructor. Id. In that role he trained co-workers, evaluated officers' ability to shoot a gun, directed those who did not meet the minimal requirements to reschedule their test and to watch for safety violations. Id. The harasser did not have any ability to make adverse employment decisions. Id.

Here, Defendants argue that there is no question as to whether Defendant Gadsden was a supervisor yet ignore a number of the details of his authority in their rush to conclude that he did not have this authority. Plaintiff states that Defendant Gadsden told her when to take breaks, what to clean, assist him when he needed help, and could influence discipline. Exh. A, pp. 145-148. Defendant Gadsden additionally wore a nametag that represented that he was a "shift lead." Exh. A, p. 221. Even though the title was eventually done away with, the position remained with the title of "Senior Cast Member." Defs. Exh. 43. Plaintiff states that this supervisory authority enabled Defendant Gadsden to harass her as she was fearful due to his supervisory position. Exh. A, pp. 142-143, 226. Similar to Tepperwien, there is a question of fact as to whether Defendant Gadsden was a supervisor.

Thus, Plaintiff clearly established that Defendant Gadsden's actions should be imputed to Defendant Regal. Defendants have ignored evidence in their effort to obtain premature judgment on the facts and their motion should be denied.

> B. *Defendants Are Liable for the Hostile Work Environment Created After Plaintiff Complained About Sexual Harassment*

Defendants additionally argue, somewhat disjointedly, that there was no hostile work environment after Plaintiff complained about Defendant Gadsden's sexual harassment and

7

threats. In order to establish a hostile work environment claim Plaintiff must demonstrate that "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2nd Cir. 2011) (citing Mack, 326 F.3d at 122). If the harassment is committed by coworkers then the plaintiff must show that "the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Id. at 107 (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2nd Cir. 1997); Karibian v. Columbia Univ., 14 F.3d 773, 780 (2nd Cir. 1994)).

Plaintiff, after complaining about Defendant Gadsden initially, provided a statement on or about October 28 stating that Defendant Gadsden was going around the workplace lying and spreading rumors about her. Defs. Exh. 20. She additionally complained at that time that Defendant Gadsden threatened her. Defs. Exh. 20. Defendant Gadsden's actions resulted in people at work treating her badly, ignoring her, spreading rumors and otherwise treating her differently than they had previous to her complaint. Defs. Exh. 32. Plaintiff, due to this harassment, was constantly in tears and emotionally distraught every time she came to work. Defs. Exh. 32; Deposition of Jane Cinsov, Exh. D, pp. 24-26. Defendant Regal specifically requested the statements included in Defendants' Motion as exhibits 20 and 32 and thus had full knowledge of these events throughout. Rather than address them they conducted a superficial investigation and chose to take no action other than to schedule the two on separate shifts after a brief suspension. Defs. Exh. 14. Thus, Defendants knew of the harassment and chose to do nothing substantive about it.

Further, there is a question of fact as to whether there was a reasonable avenue for

complaint. Plaintiff testified that "for the two years or so that [she] worked for Regal, [employees] were never properly trained to be informed about this type of situation" referring to sexual harassment. Exh. A, pp. 193-194.

Defendants' motion does not even address the complaints about rumors, fear of further threats or violence and Plaintiff's constant crying while at work due to the stress and shock of the situation. They further assume that there was a reasonable avenue for complaint without addressing Plaintiff's questions as to that point. As such, Defendants' motion should be denied in its entirety.

### III. Defendants Are Liable for Plaintiff's Claim for Retaliatory Termination and Other Retaliation Claims

Defendants' motion claims that Plaintiff designated only three retaliatory actions taken by Defendants: (1) reduced hours, (2) her transfer and (3) her discharge. This assumedly ignores the retaliatory hostile work environment previously discussed. The first of these three is "refuted" by a claim that on one day referenced in the complaint she was sent home two hours before Defendant Gadsden got there. Def. Mot. p. 20. Of course, this does not provide any evidence which would demonstrate that the motivation behind this act was not retaliatory or that this was the only instance that Plaintiff lost work hours. They are correct, however, in noting that Plaintiff did request the transfer. The true mistake in Defendants' motion is their argument that Plaintiff's termination was retaliatory after she had been out for nearly seventeen weeks. They do not address how Plaintiff was constructively discharged in retaliation for her complaint.

A plaintiff establishes a claim of constructive discharge when an employer creates a work environment which is so intolerable that the employee is compelled to resign. Terry v. Ashcroft, 336 F.3d 128, 152 (2nd Cir. 2003) (citing Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 89 (2nd Cir. 1996)). It must additionally be stated that the reason for the intolerable

environment is due to the plaintiff's membership in a protected class. Id. (citing Chertkova, 92 F.3d at 91).

Here, Plaintiff was protected due to her complaint of sexual harassment. The response of her coworkers to this complaint was to harass her and create an environment which drove her to tears on a near constant basis. Defs. Exh. 32; Exh. D, pp. 24-26. Management, rather than address these concerns, chose to simply ignore the atmosphere Plaintiff was in while downplaying or excusing specific acts which harassed Plaintiff. Defs. Exh. 32. While Plaintiff alleged this to be intentional, Defendants do not even address this claim, offering instead to note that while Plaintiff was emotionally unable to work they allowed her to take leave. Defs. Memo, pp. 19-21. As such, Plaintiff has a claim for retaliatory constructive discharge as there is a question of fact as to whether a reasonable person would be able to continue working under those circumstances. Further, whether this was reasonable is supported by the doctor's request that Plaintiff not return to work due to these circumstances.

### IV. Defendant Gadsden is Liable to Plaintiff Individually

Because Defendants' motion fails in its entirety Defendant Regal is liable for discrimination and, as such, Defendant Gadsden is liable as an aider and abettor.

### V. Plaintiff Can Prove Her Claims for Sex Discrimination, Sexual Assault and Battery

Defendants cite no relevant legal theory for dismissing Defendant Gadsden under the NYCHRL. While Plaintiff does not claim to assert a claim against him under the Federal law, the New York City Administrative Code, Title 8-107(19) states that it is illegal to "threaten… any person in the exercise or enjoyment of … any right granted or protected pursuant to this section." NYCHRL § 8-107(19). Here, Plaintiff complained of discrimination which is illegal under the NYCHRL and Defendant Gadsden threatened her because of it. Defs. Exh. 32. Thus Defendant

Gadsden is clearly in violation of this portion of the law.

Further, Defendants' motion fails entirely to establish entitlement as a matter of law on Plaintiff's assault and battery claims as the facts and circumstances of the attack are clearly in dispute. A reasonable fact finder could agree that Plaintiff's version of events constitutes assault and battery and as such Defendants' motion fails.

**VI. The Court Should Exercise Pendant Jurisdiction**

While it is true that this Court is not obligated to exercise pendant jurisdiction over claims without original jurisdiction in the Federal Courts, Plaintiff would ask that in the unlikely event that Defendant is successful in their motion on the Federal causes of action this Court exercise pendant jurisdiction over any and all remaining claims. Since Defendants do not even attempt to have Plaintiff's NYCHRL claims dismissed other than those for aiding and abetting, it is unavoidable that these claims will remain after the motion is decided. Thus, since this Court has heard all issues to this point and trial is scheduled to begin in the next couple of months, it would be in the best interest of justice to have the claims proceed in front of Your Honor. Should Your Honor not exercise pendant jurisdiction Plaintiff would have to initiate a new claim in the Supreme Court and trial would be delayed significantly. Thus, Plaintiff would request that trial proceed as scheduled.

## **CONCLUSION**

Because Defendants fail to establish entitlement to judgment as a matter of fact and law, their motion should be denied in its entirety and Plaintiff should be given costs, fees and any further relief the Court finds proper.

Dated:  New York, New York
        December 23, 2011

                                Respectfully submitted,


                                By:    /s/Jesse C. Rose
                                    Jesse C. Rose (JR-2409)
                                        Of Counsel